THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Boris Karpachev; Rufina Veysberg; and Roman Karpachev,<br><br>Plaintiffs,<br><br>v.<br><br>City of Newton, Massachusetts; John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; person "Introducing self as the Police Officer 101"; Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; and Dyanne J. Klein<br><br>Defendants. | **CIVIL COMPLAINT**<br><br>**Case No.**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

NATURE OF ACTION…………………………………………………………..1

PARTIES……………………………………………………………………2

A. The Plaintiffs………………………………………………………….2

B. The Defendants………………………………………………………...3

1. The City of Newton Defendants……………………………………………3

2. The District Attorney Defendants……………………………………………...4

3. The Newton District Court Defendants…………………………………………...5

JURISDICTION AND VENUE………………………………………………………...5

FACTUAL ALLEGATIONS

A.      MARIA, a Russian Federation citizen commits Marriage for
        Immigration Fraud……………………………………………………..6

B.      Newton Police enter unfounded Incident Report for MARIA,
        a Russian Federation citizen would look like being abused by
        ROMAN, a U.S. citizen……………………………………………………..8

C.      Newton Police falsely arrest ROMAN, illegally search him and the
        apartment, illegally seize a shirt from the apartment, punish with pain,
        harass ROMAN and illegally cover the unfounded Incident Report entered
        already………………………………………………………………….9

D.      Newton Police help MARIA to steal the immigration documents,
        Newton Police give ROMAN only the copy of the first page of the
        Complaint and the Abuse Prevention Order executed by Newton
        Police, not by the accuser and the judge…………………………………14

E.      Faulted Prosecution. Russian Federation Consulate interested in success
        of Russian Federation citizen's Marriage for Immigration Fraud………….16

FIRST CAUSE OF ACTION: MALICIOUS PROSECUTION AND
SEIZURE IN VIOLATION OF 42 U.S.C. § 1983…………………………………26

SECOND CAUSE OF ACTION: MALICIOUS SEARCHES AND SEIZURES
IN VIOLATION OF 42 U.S.C. § 1983………………………………………..27

THIRD CAUSE OF ACTION: CONCEALMENT OF EVIDENCE IN
VIOLATION OF 42 U.S.C. § 1983...................................................................28

FOURTH CAUSE OF ACTION: FABRICATION OF FALSE EVIDENCE
IN VIOLATION OF 42 U.S.C. § 1983...........................................................29

FIFTH CAUSE OF ACTION:  VIOLATIONS OF 42 U.S.C. § 1983
(*MONELL V. DEP'T OF SOCIAL SERVS.*, 436 U.S. 658 (1977))....................30

A.    The Supervisors and other Officials with Final Policymaking Authority
      for Newton Police Do Not Object the Unconstitutional Conduct of Their
      Subordinates...........................................................................................30

B.    The Supervisors' Failures to Train, Control, and Supervise Newton
      Police Officers Led to Violations of Plaintiffs' Constitutional Rights.........31

SIXTH CAUSE OF ACTION: SUPERVISORY VIOLATIONS OF
42 U.S.C. § 1983................................................................................................33

A.    The Supervisors' Failure to Supervise the Newton Police Officers
      Resulted in Violations of Plaintiffs' Constitutional Rights....................33

SEVENTH CAUSE OF ACTION: CONSPIRACY IN VIOLATION OF
42 U.S.C. § 1983................................................................................................34

EIGHTH CAUSE OF ACTION: CONSPIRACY IN VIOLATION OF
42 U.S.C. § 1985(2) (OBSTRUCTION OF JUSTICE)................................35

NINTH CAUSE OF ACTION: CONSPIRACY IN VIOLATION OF
42 U.S.C. § 1985(3)...........................................................................................37

TENTH CAUSE OF ACTION: CONSPIRACY IN VIOLATION OF
42 U.S.C. § 1986 (NEWTON POLICE)................................................................39

ELEVENTH CAUSE OF ACTION: MALICIOUS PROSECUTION AND
CONSPIRACY.....................................................................................................40

TWELVETH CAUSE OF ACTION: OBSTRUCTION OF JUSTICE AND
CONSPIRACY.....................................................................................................42

THIRTEENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS AND CONSPIRACY.........................................43

FOURTEENTH CAUSE OF ACTION: NEGLIGENT SUPERVISION, HIRING, TRAINING, DISCIPLINE, AND RETENTION BY NEWTON POLICE………..44

FIFTEENTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY NEWTON POLICE………………………………45

PRAYER FOR RELIEF…………………………………………………………46

JURY DEMAND…………………………………………………………………...48

## NATURE OF ACTION

1.      This is a civil action for monetary damages and injunctive relief under the Fourth and Fourteenth Amendments to the Constitution of the United States; the Constitution of the Commonwealth of Massachusetts, Part the First, Article XI-XV, Article XVIII, Article XX and Article XXX; 18 U.S.C. §§ 242 and 1512 (c)(1) & (2) and (d)(3) & (4); 42 U.S.C. §§ 1983, 1985 and 1986; M.G.L. c.12 § 11I; M.G.L. c.263 §§ 1 & 1A; M.G.L. c.265 § 13A(a); M.G.L. c.266 § 20 and the common law of the Commonwealth of Massachusetts. This civil action is arising from one of the most chilling episodes of premeditated police and prosecutorial misconduct in modern American history (which resulted in a charge brought and maintained against an innocent U.S. male citizen over a period from August 25, 2007 till July 2, 2009 and libeling the family of three U.S. citizens over a period from August 25, 2007 till now), in order to help a female citizen of Russian Federation (illegally entered the United States and supported by the Intelligence of the Russian Federation), to naturalize to the United States as if a female spouse battered by a U.S. citizen.

2.      From August 25, 2007 till July 2, 2009, Defendants, individually and in concert, maliciously conspired to libel the family, bring and push through the court a charge of Assault and Battery against the U. S. male citizen. Defendants knew that the charge was completely and utterly unsupported by probable cause, and a total fabrication made by the Police in response to a request of the female citizen of Russian Federation. Defendants tried to get the conviction of the U. S. male citizen in order the female citizen of Russian Federation would look like a female spouse battered by the U.S. citizen and would be able illegally naturalize to the United States. Defendants willfully ignored and were deliberately indifferent to overwhelming evidence of Plaintiffs' actual innocence. Defendants' actions

evidenced a reckless and callous disregard for and deliberate indifference to Plaintiffs' constitutional rights and Defendants' responsibilities to the criminal justice system and the United States. The Defendants' policies, customs, practices, and supervisory misconduct raises a substantial risk of irreparable injury to other persons in the City of Newton, to the safety of the United States.

3.      As a result of Defendants' actions Plaintiffs have suffered deprivations of the rights guaranteed to them under the Fourth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the Commonwealth of Massachusetts, Part the First, Article XI, Article XII, Article XIII, Article XIV, Article XV, Article XVIII, Article XX and Article XXX. As other result of Defendants' actions Plaintiffs have suffered economic, emotional, and physical harm; they have suffered irreparable harm to their reputations; and they have incurred Thousands of dollars in legal fees defending themselves against criminal prosecutions that the Defendants knew were baseless.

4.      Moreover, because the Defendants' policies, customs, practices, and supervisory misconduct raises a substantial risk of irreparable injury to other persons in the City of Newton and the United States. Plaintiffs seek the entry of an Order and Permanent Injunction, as set forth in further detail below, to protect all persons and to prevent such misconduct from ever happening again.

## PARTIES

### A.      The Plaintiffs

5.      Plaintiff Boris Karpachev is a U.S. citizen since 2004 and a resident of Massachusetts. He is the father of Roman Karpachev.

6.      Plaintiff Rufina Veysberg is a U.S. citizen since 2004 and a resident of

2

Massachusetts. She is the mother of Roman Karpachev.

7.      Plaintiff Roman Karpachev is a U.S. citizen since 2004 and a resident of Massachusetts. He is the son of Boris Karpachev and Rufina Veysberg, husband and wife.

8.      As of August 25, 2007, each of the Plaintiffs did not have any criminal or other record of inappropriate behavior. Each of the Plaintiffs lived in the City of Newton of Massachusetts. Boris Karpachev and Rufina Veysberg worked as Home Health Aids. Roman Karpachev worked as a Programmer.

### B.      The Defendants

#### 1. The City of Newton Defendants

9.      Defendant City of Newton is a municipal corporation formed under the laws of Massachusetts.  Upon information and belief, the City of Newton is self-insured for general liability insurance sufficient to accept the civil liability – the city's General Fund total is about \$290 million. In 2004-2005 the City of Newton was on the 1st place among the safest cities of the United States. In 2007, when the described below events had happened, the City of Newton dropped to the 8th place.

10.      The City of Newton operates the Newton Police Department ("Newton Police"), which is the city department having law enforcement authority in the City of Newton.

11.      Relevant to this action Defendant John Shea was, upon information and belief, a sergeant of Newton Police, a citizen of the United States and Massachusetts.

12.      Relevant to this action Defendant George Claflin was, upon information and belief, an officer of Newton Police, a citizen of the United States and Massachusetts.

13.      Relevant to this action Defendant Thomas Cloonan was, upon information and

3

belief, an officer of Newton Police, a citizen of the United States and Massachusetts.

14.     Relevant to this action Defendant Thomas DeStefano was, upon information and belief, an officer of Newton Police, a citizen of the United States and Massachusetts.

15.     Relevant to this action Defendant William Spalding was, upon information and belief, an officer of Newton Police, a citizen of the United States and Massachusetts.

16.     Relevant to this action Defendant introducing self as "the Police Officer 101" was, upon information and belief, an officer of Newton Police, a citizen of the United States and Massachusetts.

17.     Relevant to this action as the supervisor, Defendant Matthew Cummings was, upon information and belief, a captain of Patrol Bureau of Newton Police, a citizen of the United States and Massachusetts, and he is the current Chief of Newton Police and as such is also liable as the successor to the previous chief.

18.     Relevant to this action as the supervisor, Defendant John O'Brian was, upon information and belief, the Chief of Newton Police.

19.     Relevant to this action as the supervisor, Defendant David B. Cohen was, upon information and belief, the Mayor of the City of Newton.

20.     Relevant to this action as the successor to the supervisor, Defendant Setti D. Warren is, upon information and belief, the Mayor of the City of Newton, the successor to the mayor David B. Cohen.

### 2. The District Attorney Defendants

21.     Relevant to this action Defendant Deborah Gaffney was, upon information and belief, the Assistant District Attorney, a citizen of the United States and Massachusetts.

22.     Relevant to this action Defendant Patrick Michael Grogan was, upon

information and belief, the Assistant District Attorney, a citizen of the United States and Massachusetts.

### 3. The Newton District Court Defendants

23.     Relevant to this action Defendant Dyanne J. Klein was, upon information and belief, Presiding Justice of Newton District Court, a citizen of the United States and Massachusetts.

24.     Relevant to this action Defendant Henry H. Shultz was, upon information and belief, Clerk of Newton District Court, a citizen of the United States and Massachusetts.

### JURISDICTION AND VENUE

25.     This action arises under the Fourth and Fourteenth Amendments to the Constitution of the United States; the Constitution of the Commonwealth of Massachusetts, Part the First, Articles XI-XV, Article XVIII, Article XX and Article XXX; 18 U.S.C. §§ 242 and 1512 (c)(1) & (2) and (d)(3) & (4); 42 U.S.C. §§ 1983, 1985 and 1986; M.G.L. c.12 § 11I; M.G.L. c.263 §§ 1 & 1A; M.G.L. c.265 § 13A(a); M.G.L. c.266 § 20 and the common law of the Commonwealth of Massachusetts.

26.     This Court has original jurisdiction over Plaintiffs' constitutional and federal law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

27.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiffs' federal claims.

28.     This Court has independent original jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the citizen and the agency of the foreign state is

relevant to this action.

29.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§
1391(b)(1), (2), and (3), because the Plaintiffs and the Defendants reside and may be found in
Massachusetts and the events giving rise to these claims occurred in Massachusetts.

## FACTUAL ALLEGATIONS

### A.     MARIA, a Russian Federation citizen commits Marriage for Immigration Fraud

30.     Plaintiff Boris Karpachev (BORIS), Plaintiff Rufina Veysberg (RUFINA) and
Plaintiff Roman Karpachev (ROMAN) knew that Maria Golopapenko (MARIA), a citizen of
Russian Federation, entered the United States on June 18, 2003, as if J-1 exchange visitor.

31.     But, till the end of 2007, the Plaintiffs did not know and had not the
possibility to know that MARIA's entering the United States was the unlawful action,
because she entered the United States as J-1 exchange visitor to be a Painter's Helper,
whereas the U. S. State Department had expressly prohibited the use of J-1 visa for unskilled
visitors, including helpers. MARIA worked as Painter's Helper less than a month, only in
June 2003, and after that she changed her address several times. MARIA did not belong to
one of those eleven categories, which J-1 visa intended for. Also she overstayed the time (till
October 1, 2003) allowed her to stay in the United States with her J-1 visa, and that the U.S.
Citizenship and Immigration Services (USCIS) sent her a Notice of Deportation Proceedings
(or similar notice) trying to deport her as a non-citizen the USCIS believed was not entitled
to stay in the United States – MARIA did not leave the United States but consulted the
immigration attorneys on how to avoid the deportation and continue her stay in the United
States further. As a result, by the end of 2003, MARIA knew that the only way to continue
her stay in the United States was the marriage to a U.S. citizen.

6

32.     ROMAN met MARIA in January of 2004. In November 2004, ROMAN became the U.S. citizen. In about December 2004, MARIA proposed ROMAN to marry her. On January 14, 2005, ROMAN married MARIA for the rest of life, as he believed. Then ROMAN filed the forms with the U.S. Citizenship and Immigration Services (USCIS) for MARIA, he believed, his real wife, not the sham one. MARIA received the conditional "Green Card" till October 4, 2007 – ROMAN did not understand that she had to leave the United States, if she had divorced him, unless she had been abused by him, the U.S. citizen – ROMAN loved MARIA and did not expect the treachery from MARIA. In July, 2007 ROMAN and MARIA together filed the Petition to Remove Conditions on Residence. ROMAN and MARIA do not have children, because MARIA refused to have them.

33.     On Thursday, August 23, 2007 MARIA received a letter from the USCIS informing her that her conditional "Green Card" had been extended for a year. Next day, August 24, 2007, at about 11:50 p.m. MARIA attacked ROMAN by pushing him hard to his back and against the wall in the bathroom (MARIA, being under the oath, admitted to that act, in the Newton District Court on August 27, 2007) – ROMAN did not understand that MARIA provoked him into the physical fight, because she needed some physical harm from ROMAN as the evidence of her accusations of being abused by the U.S. citizen. ROMAN did not answer the challenge. MARIA and ROMAN went to bed and slept together till morning of August 25, 2007.

34.     On August 25, 2007, Saturday, in around 10:00 a.m. – BORIS was watching TV. MARIA carrying middle-sized bags passed twice in front of him. BORIS thought, "Oh, they are going to Cape Cod" – ROMAN previously had told him that he and MARIA were going to Cape Cod on Saturday.

35.    In the morning of August 25, 2007, Saturday, when Newton District Court
was closed for business, at about 10:24 a.m., MARIA, upon information and belief, appeared
at Newton Police Station and requested Newton Police to enter the Incident Report about the
abuse to her by ROMAN, in order to submit that report to USINS officer as the proof of her
being abused by a U.S. citizen, though she had not been abused – MARIA premeditated to
defraud the United States, to wit, to pretend to be a battered spouse and to file with USINS an
immigrant visa petition under the Violence against Women Act (VAWA) in order to get
around the immigration laws and illegally obtain federal immigration benefits. And Newton
Police began helping MARIA to look like a battered spouse, though she was not battered or
abused.

### B.    Newton Police enter unfounded Incident Report for MARIA, a Russian Federation citizen would look like being abused by ROMAN, a U.S. citizen

36.    In response to MARIA's request, in five (5) minutes and fifty (50) seconds, at
10:29:50, Police Officer Thomas DeStefano premeditatedly filed the unfounded Incident
Report #7037810, where a lot of imaginable events were described as if they had happened
unnaturally fast within those 5 minutes and 50 seconds, to wit: a) MARIA's narration; b)
ROMAN's being been located by Police; c) arrest of ROMAN; d) having transported
ROMAN to HQ; e) booking of ROMAN; f) placing ROMAN into a cell; g) and even Sgt
Shea's traveling in THE FUTURE, to 12 noon that day, in order to call a judge on duty and
serve ROMAN in hand with an abuse prevention order, whereas the future 12 noon had not
become the past yet, at 10:29:50, when the report was entered. Newton Police knew that
there had been no reason to believe that MARIA had been abused or was in danger of being
abused. Newton Police Officer libeled BORIS, RUFINA and ROMAN and committed

Obstruction of Justice, at least.

37.    Even being unfounded the Incident Report #7037810 showed the following:

•    MARIA was not a victim of abuse, she was not harmed – the reporting Police Officer Thomas DeStefano wrote on the page 2 of the report: "ROMAN HAS ALSO THREATEN TO TAKE AWAY HER GREEN CARD. THERE WAS NO VISIBLE SIGNS OF ABUSE ON MARIA'A BODY. SGT SHEA INTERVIEVED MS GOLOPAPENKO AND DETERMINED THAT THERE WAS PROBABLE CAUSE TO ARREST ROMAN KARPACHEV FOR A&B";

•    The cause of arrest was the immigration issue, the green card;

•    There was no reasonable and probable cause to arrest ROMAN: the uncorroborated accusation of the non-victim MARIA could not be the reasonable and probable cause for the arrest; the affidavit by a victim was not mentioned in the report – Plaintiffs managed to see the Affidavit as if by MARIA a year later, in November 2008 – the Affidavit was written by Sergeant John Shea and somebody else, not by MARIA –  the Affidavit did not meet the 901. Requirement of Authentication or Identification (Rules of Evidence);

•    ROMAN did not intend to harm MARIA. ROMAN had not committed any wrongdoing.

38.    On that day, August 25, 2007, at about 10:30 a.m., BORIS, RUFINA and ROMAN did not know yet that the Incident Report #7037810 had been entered already – RUFINA and BORIS went to work, as usual – MARIA knew their usual work schedule – ROMAN slept and did not know where MARIA had gone – but MARIA and Police knew that ROMAN was alone at home.

**C.    Newton Police falsely arrest ROMAN, illegally search him and the apartment, illegally seize a shirt from the apartment, punish with pain,**

9

**harass ROMAN and illegally cover the unfounded Incident Report entered already**

39.     At approximately 10:40 a.m., upon information and belief, Sergeant John Shea, Police Officer George Claflin and Police Officer Thomas Cloonan came to the Plaintiffs' apartment. One of them knocked on the door of the apartment, where ROMAN slept – torso-bared ROMAN opened the door (the apartment was situated on the second and third floor, so the entrance door was on the second floor and a staircase led down to the yard), and ROMAN saw a Police Officer standing in front of the door, and two Police Officers standing downstairs in the yard below, which was surrounded with a fence and greenery, so unlikely anybody could see what was going on in the yard. Newton Police had to follow the Massachusetts Policy for Law Enforcement Response to Domestic Violence, at least.

40.     The Police Officers did not introduce themselves. The Police Officer standing in front of the door, upon information and believe, asked, "Roman?" ROMAN answered, "Yes, it is me." The Police Officer asked ROMAN to get out of the apartment and downstairs, to the yard. So ROMAN did, as he did not suspect anything unlawful from the Police Officers. The Police Officer asked whether ROMAN knew MARIA. ROMAN answered that he knew her. The Police Officer asked of what had happened in the shower in the evening of the day before. ROMAN answered that MARIA had pushed him hard against the wall and he had said, "Are you crazy? What are you doing? I could fall." – it had been wet and slippery in the shower. The Police Officer asked ROMAN to show his hands. So ROMAN did. ROMAN's hands were clear, no scratches or anything of that kind. The Police Officer told ROMAN to put his hands behind his back. So ROMAN did. The young Police Officer unexpectedly seized ROMAN's hands and then ROMAN was handcuffed. Newton

10

Police Officers conspired and committed Assault and Battery on ROMAN, at least.

  41. The Police Officer said that they had to arrest ROMAN, because his wife was filing a complaint at the Police Station. No one of the Police Officers told ROMAN that the unfounded Incident Report had been entered already. ROMAN asked whether the arrest was necessary. The Police Officer only answered, "Yes". The Police Officer did not tell ROMAN that his arrest was needed in order to cover the unfounded Incident Report entered already. The other Police Officer intentionally tightened handcuffs to punish ROMAN with pain – ROMAN felt pain in his wrists. ROMAN believed that the Police Officers would kill or beat him, because they were aggressive, rude and mean, especially the older Police Officer wearing eyeglasses, and ROMAN did not know any reason to arrest him, and the yard was not visible from outside. The Police Officers arrested ROMAN and took him into custody without full and plain, substantial and formal description of the crime or offence or probable cause, at least. The Police Officers behavior was threatening to ROMAN, at least.

  42. One of the Police Officers searched ROMAN's pockets and found only ROMAN's cell phone. The Police Officer asked ROMAN for his driver's license. ROMAN answered that it was in his car. The Police Officer asked where the key to the car was. ROMAN answered that it was hanging on the hook in the apartment. Without any reasonable and probable cause Newton Police Officers intentionally violated ROMAN's reasonable expectation of privacy, at least.

  43. The Police Officer went to the empty apartment. The other Police Officer gave him a shout to take something to cover ROMAN. Without the search warrant the Police Officer entered the empty apartment, searched it, found and took the key and BORIS' shirt from BORIS and RUFINA's bedroom (later, ROMAN was booked while wearing BORIS'

11

shirt, what was seen in the booking photos). The Police Officer unreasonably searched BORIS and RUFINA's bedroom and unreasonably seized BORIS' personal property, the shirt, without the permission of the owners or a search warrant or a probable cause. The Police Officer took the shirt without right or consent and with intent to make use of it, at least.

44.     The Police Officer unlocked ROMAN's car and searched it. The Police Officer found a universal tool (pliers, knife, screw driver etc. as a one piece), asked ROMAN what it was. ROMAN answered that it was a tool. Police Officer put the tool back and did not take ROMAN's Driver's License. The police fished for anything criminalizing ROMAN. That was the unreasonable search without probable cause; and also without any reasonable and probable cause Newton Police maliciously violated ROMAN's reasonable expectation of privacy, at least.

45.     The Police Officers took torso-bared ROMAN to the police cruiser, where ROMAN dared ask of why he had been arrested. The Police Officer answered that his wife was complaining. ROMAN did not understand what was going on. ROMAN thought that something terrible had happened to his wife, MARIA. Again, ROMAN asked of why he had been arrested and again received the same answer that his wife was complaining. Newton Polices Officers did not make the full and plain, substantial and formal description of the crime or offence or probable cause, at least.

46.     At the police station torso-bared ROMAN was taken by Police Officer into the room in the basement, where he was attached with the handcuffs to a pipe mounted on the wall. ROMAN thought the Police Officers would beat him. The Police Officer began photographing and asking ROMAN to turn his face to him then to the other side, which was

painful procedure as ROMAN was attached to the pipe and the handcuff was tightly fastened on his wrists. Newton Police Officers intentionally inflicted suffering on ROMAN for the purpose of punishing him for the act he had been suspected of having committed – actually he had not committed a felony or any unlawful act or any wrongdoing – Newton Police did not make the Fingerprinting and Photographing in accordance with the System of the Bureau of Investigation and Intelligence in the Department of State Police, at least.

47.     After the Fingerprinting and Photographing, the Police Officer read Miranda Warning to ROMAN and said that the Police would not make the questioning to him. The Police Officer allowed ROMAN to use ROMAN's cell phone to make a call – ROMAN called home and left a message of where he was, and the Police Officer placed Roman into the cell #3 – that was the Tactic of Delayed Miranda Warning barred by the U.S. Supreme Court on June 28, 2004, at least.

48.     The false arrest of ROMAN made at about 10:40 was not reported. The events described above in paragraphs 37-45 were, at least, Assault and Battery, Punishment with pain, Harassment and Petty-Theft committed by Newton Police Officers.

49.     Date and time of real booking record was 08/25/2007 10:59:54 – half an hour later than the alleged booking described in the unfounded Incident Report #7037810 entered at 10:29:50.

50.     The Incident Supplement #7037810-1 was entered at 11:14:23. No times but only the date of the alleged events was reported. The Incident Supplement #7037810-1 looked as if for Incident Report #7037810, but actually contained only general misleading description of the unreported arrest made after the Incident Report #7037810 had been entered already. Newton Police Officer committed Obstruction of Justice, at least.

13

51.    At about 12:30 a.m. the Police Officer wearing eyeglasses came to the cell

where ROMAN was kept. The Police Officer was very irritated and shouted of putting

ROMAN down – the Police Officer clearly demonstrated his intention to suppress and

humiliate ROMAN. Newton Police Officer committed act of Harassment, at least.

52.    Till about 1:10 p.m. ROMAN was kept in the cold cell with bare feet (the

Police Officer took away his flip-flops) and having only thin shirt on his body – ROMAN

had frozen over. Newton Police Officers intentionally inflicted suffering on ROMAN for the

purpose of punishing him for the act he had been suspected of having committed – actually

he had not committed any unlawful act or any wrongdoing.

**D.    Newton Police help MARIA to steal the immigration documents, Newton
       Police give ROMAN only the copy of the first page of the Complaint and
       the Abuse Prevention Order executed by Newton Police, not by the
       accuser and the judge**

53.    A little earlier, at about 12:10 p.m., BORIS came home and found a phone

message from ROMAN with the phone number to call. BORIS called the number and the

female voice answered that it was the Police. BORIS hardly started conversation, as greeting

"hello" was heard from the area near the front door of the apartment. The Police Officer

appeared and MARIA was behind him. BORIS asked the Police Officer of where ROMAN

was. The Police Officer answered that ROMAN was in the police station near West Newton

Cinema. BORIS understood nothing and left the apartment for the Newton Police Station.

54.    At about 1:10 p.m. – the BORIS paid the bail of $40 at the Police Station and

ROMAN was released upon personal recognizance. The Police Officer gave ROMAN only:

(a) the copy of the first page (of two) of the Complaint for Protection from Abuse executed

by Newton Police Sergeant John Shea (not by MARIA); (b) the copies of both pages of the

Abuse Prevention Order of 8-25-07, executed by Police Sergeant John Shea (not by a judge)

14

with expiration of 8-27-08 (the duration of the order was one (1) year and two (2) days, instead of the lawful "the emergency order should expire at the end of the next court business day") and the copy of Recognizance. Sergeant John Shea put the names of BORIS, RUFINA and ROMAN and ROMAN into the Complaint for Protection from Abuse and Abuse Prevention Order.

55.     The Police Officer did not give ROMAN the copies of the Incident Report #7037810, the Incident Supplement #7037810-1, the Record of Booking (which the attorney representing ROMAN took at Clerk Office two days later, on August 27, 2007, just before the arraignment, and till November 2008 ROMAN did not see or hear of the written Affidavit of Application for Protection from Abuse). Newton Police could give to ROMAN those copies on August 25, 2007, but Newton Police did not give them with malicious intent to diminish ROMAN's ability to defend self – the Newton Police wanted ROMAN being unaware of the accusations. Newton Police Officer issued Abuse Prevention Order, as a matter of fact, in order to defend MARIA from prosecution because of her fraud against the United States, which was the only purpose of the order. Newton Police Officers, having only executive power, not the judicial one, filled out the papers, which the accuser had to fill out, and adjudicated them as a judge – thus Newton Police violated the constitutional principle of Separation of Powers, at least.

56.     In Complaint for Protection from Abuse Sergeant John Shea, acting as if MARIA, checked in the part J the box "caused me physical harm" – that was inconsistent with "there was no visible signs of abuse on Maria's body" written by Police Officer Thomas DeStefano on page 2 of the Incident Report #7037810. Newton Police Officer committed Obstruction of Justice, at least.

15

57.     On the same day, August 25, 2007, late afternoon -- ROMAN found that all documents related to MARIA and him together, as husband and wife, to wit: copies of immigration forms intended to legalize MARIA as a wife of the U.S. citizen and joint tax returns, had disappeared. At about 12:10 p.m., while ROMAN was in custody, MARIA accompanied by a Police Officer stole those documents, including all copies and originals of immigration forms related to her and ROMAN. MARIA being under the oath admitted to that action in the Court on August 27, 2007, where she promised to return the documents, but she never returned the immigration forms: I-130, G-325A on ROMAN, G-325A on MARIA, I-797 from USCIS on I-130, I-751 and I-797 from USCIS on I-751 – she only returned some other papers. MARIA had stolen those documents in order ROMAN would not know the tracking numbers of the immigration forms and thus he would not be able to prevent her illegal naturalization to the United States. Newton Police helped MARIA to steal the U.S. documents sent to ROMAN, thus Newton Police manifested the willful interference by force and helped MARIA's committing Obstruction of Justice and Fraud against the United States.

**E.     Faulted Prosecution. Russian Federation Consulate interested in success of Russian Federation citizen's Marriage for Immigration Fraud**

58.     On August 27, 2007,  just before the arraignment the attorney temporarily representing ROMAN took the copies of Incident Report #7037810, Incident Supplement #7037810 – 1, Record of Booking and handwritten Application for Criminal Complaint from Newton District Court Clerk Office. The handwritten Application for Criminal Complaint was made, upon information and belief, by Newton Police Officer George Claflin and in the box "Date Filed" he put "8.25.07" – but that was Saturday and the court was closed for business. In the part "Court Use Only", somebody put in the box "Date" hardly legible sign 8.26.7 – but that was Sunday and again the court was closed for business. The signature

16

being put in the box "Clerk/Judge" was not that of Newton District Court Clerk or its Judge.

And there was not in the application the unfounded comment, which appeared later on

printed Criminal Complaint (Defendant Copy), which was given to ROMAN a month later,

on September 25, 2007. Newton Polices Officers did not make the full and plain, substantial

and formal description of the crime or offence or probable cause, at least.

   59.  ROMAN and the attorney were not ready for the arraignment. At the

arraignment and spontaneous (without any notice) preliminary hearing at the Court, Justice

Margaret A. Zaleski, as the judge, entered by the name of the Court the plea of "not guilty"

for ROMAN. Then, somebody told the judge that MARIA was there. The judge called

MARIA, ROMAN and the attorney to the microphones. They were sworn. Then MARIA

repeated her accusations about what happened in the shower, where she and ROMAN had

been together on August 24, 2007 at about 11:50 p.m. The attorney told that actually MARIA

may be motivated with an immigration issue, but as he was not an immigration attorney, then

he was unable to tell what kind of the issue that was. Then ROMAN told what happened.

Partly, ROMAN mentioned that he had asked Maria to rub his back with a sponge. Maria did

a couple strokes. ROMAN asked to rub a little more. Unexpectedly, Maria pushed ROMAN

very aggressively and hard to his back and against the bathroom wall. The judge asked

MARIA whether that was true. MARIA answered, "Yes". The attorney added that MARIA

took without ROMAN's consent the copies of immigration documents received by ROMAN

and her and joint tax returns, and the attorney requested to return those documents or their

copies to ROMAN. The judge asked MARIA whether she had taken those documents. Maria

answered, "Yes". The judge asked whether she would return the documents. MARIA

answered, "Yes". Later, Maria returned some papers but she did not return the immigration

forms and receipts.

60.     Then the Bailiff, upon information and belief, Robert Ryan entered the judge's bench, stopped at Margaret A. Zaleski's right side, bent to her ear and started secretly whispering something to her – and justice Margaret A. Zaleski signed the section "C. Prior Court Order Extended" of the Abuse Prevention Order of 8-25-07 – actually, she corrected the unlawful order issued by Newton Police Sergeant John Shea – she shortened the order by three (3) days), though there had not been the notice of the hearing. Margaret A. Zaleski violated Guidelines for Judicial Practice – Abuse Preventing Proceedings. As there was no abuse, the Abuse Prevention Order, as a matter of fact, only prevented the prosecution of MARIA's fraud against the United States. Justice Margaret A. Zaleski and Bailiff Robert Ryan committed Obstruction of Justice, at least.

61.     On August 30, 2007, upon the ex-parte motion by MARIA, Abuse Prevention Order was modified. Then MARIA filed the Complaint for Divorce with the Trial Court, Probate and Family Court Department, Middlesex Division, where, in part 4, Maria mentioned Newton District Court Civil Abuse Prevention Order. Also, Maria filed Motion for Support & for Medical Insurance. ROMAN did not know about the complaint for divorce.

62.     On September 10, 2007, at about 11:14 a.m. – MARIA broadcasted email "My side of story" to about 20 recipients, except ROMAN and his relatives. In about 15 minutes somebody forwarded email to ROMAN. In the email MARIA wrote: "… I did research in the internet about abuse behavior and meet some women, who was previously abused by their husbands and they weren't lucky as I am, …" and further: "The police was very helpful and supportive. We had a court on Monday, August 27th. As a result of hearing,

I now have a restraining order against Roma. On Thursday, August 30th, I filed for divorce". ROMAN became informed about the divorce, which was quite a shock to him. In about ten days ROMAN began to understand that he never had a real wife but the sham one.

63.     On September 11, 2007, ROMAN filed the Complaint for Annulment, case No. 07D2974AN1. In part 5 of the Complaint ROMAN wrote "practiced 'sham' marriage … in order to get around the immigration laws and illegally obtain federal immigration benefits". Serving Summons on Maria was ordered at Middlesex County Sheriff.

64.     In the beginning of September 2007, there were intimidating phone calls to ROMAN by a Police Officer, a woman, for allowing MARIA to take allegedly her belongings from the apartment. Though, the abuse prevention order did not provide for such a visit, but under the intimidating pressure of the Police Officer, ROMAN agreed for a visit by Maria with one accompanying person on September 15, 2007 at 10:00. Newton Police Officer committed act of Harassment to BORIS, RUFINA and ROMAN.

65.     September 15, 2007, about 10:00, Maria accompanied by two Police Officers, two women and a man came to the apartment, where ROMAN lived to take her belongings. A little later appeared courier from Sheriff's office and handed in the summons about divorce to ROMAN and the summons about annulment to MARIA. The summons to MARIA was immediately taken by one of the women Rossella T. Avitabile accompanying MARIA. Rossella T. Avitabile got understood that there was no abuse to MARIA -- and Rossella T. Avitabile never was seen again. Newton Police Officers committed act of Harassment to BORIS, RUFINA and ROMAN.

66.     September 25, 2007, about 10:30 a.m., the pretrial hearing supposed to be. The attorney representing ROMAN temporarily asked the Assistant District Attorney, upon

information and belief, Deborah Gaffney to postpone it, as there was expected the change of the attorney for ROMAN. The Assistant District Attorney Gaffney answered that she had not seen the case yet and she would rather go for a trial, though she must see and read the case before deciding on what to do next. Upon information by the Assistant District Attorney Deborah Gaffney, Justice Margaret A. Zaleski rescheduled the pretrial hearing to November 13, 2007 at 9:00 a.m. The Assistant District Attorney violated, at least, her constitutional obligation of verification of facts in the vicinity where they happened.

67.     After that ROMAN was given the Defendant's Copy of Criminal Complaint having the wrong date of his arrest, namely, 08/24/2007, Friday, as if the Court was open for business, and when the written affidavit by MARIA (an accuser) was not necessary but only welcomed. But the real date of the arrest was 08/25/2007, Saturday, when the Court was closed for business, and the written affidavit by MARIA (an accuser) was necessary. Also, there appeared in the Defendant's Copy of Criminal Complaint from nowhere the unfounded comment on wrongdoing "did assault and beat Maria Golopapenko" not supported by any evidence. Newton Police Officers or Clerk of Newton Court committed, at least, Obstruction of Justice. During the arrest of August 25, 2007, and in the cell, and during the next month, including the arraignment, ROMAN asked what he had done wrong and received no answer. In a month he received, at last, the unfounded answer that he allegedly "did assault and beat Maria Golopapenko". Never Newton Police did make the full and plain, substantial and formal description of the crime or offence or probable cause Roman had been arrested for.

68.     Two cases were started in Newton District Court and two cases (for divorce and for annulment) in Probate and Family Trial Court for Middlesex. There was the lobbying in both Courts, at first, by the person, who did not leave any written traces of his presence in

the Courts (the appearances), but acted as if MARIA's attorney, and introduced himself as "the only-learning-to-be-a-lawyer", and showed the court officers the dark pink ID – after that the Assistant District Attorney Deborah Gaffney changed her position in the criminal case. In 2010 the name of that person Richard W. Kendall became known from public records. Richard W. Kendall committed Obstruction of Justice, at least.

69.     Richard W. Kendall was a friend of Peter T. Marano, Esq., who later appeared in both courts. In accordance with the article "Security force, tenants seek peace at Harbor Point" by Hermione Malone and Judy Rakowsky, Globe Staff, Boston Globe, July 7, 1999, Peter Marano, then the Chief of Security at Harbor Point, harassed daily some residents of Harbor Point, especially the young black and Hispanic males and even kids, and on July 4, 1999, Peter Marano allegedly hit one resident with his car – that started the insurgence – as a result, Peter Marano was dismissed from his duties as Chief of Security at Harbor Point.

70.     On October 10, 2007, ROMAN submitted to Assistant District Attorney Deborah Gaffney nineteen pages of his explanation of what was going on. Assistant District Attorney Deborah Gaffney ignored that explanation – there was no answer or other reaction. The Assistant District Attorney violated, at least, her constitutional obligation of verification of facts in the vicinity where they happened.

71.     On November 20, 2007 BORIS sent the fax to Russian Consulate in New York (to Sergey V. Garmonin, Consul General, Consulate General of the Russian Federation in New York, 9 East 91st Street, New York, NY 10128, Phone: 212-348-0926, Fax: 212-831-9162), in which BORIS described what happened to his family and requested to stop the marriage-immigration fraud committed by Russian Federation citizen.

72.     Next day BORIS found a phone message, in which an unknown asked BORIS

21

to call the phone number 212-348-0626 and ask for "Vitaliy". BORIS called, asked for "Vitaliy". In all, BORIS had short conversations with "Vitaliy" about the problem of BORIS' family two or three times. "Vitaliy" did not disclose his real name. And during the last conversation BORIS mentioned that in 2006 MARIA renewed her internal passport of Russian Federation without presence at her residence in Russia, what had been impossible to accomplish legally, in BORIS' opinion. "Vitaliy" answered that that was not big deal and proposed to wait and see what happened on February 11, 2008 at the divorce-annulment trial and on February 13, 2008 at the criminal trial.

73. BORIS never did call "Vitaliy" again, because BORIS had realized that, upon information and belief, "Vitaliy" was the Russian Federation Intelligence Officer working under the cover of the consulate – "Vitaliy" was interested in MARIA's successful illegal immigration to the United States, though, from the Russian Federation point of view, MARIA should be a defector, as she had not returned to the Russian Federation after her J-1 visa expired and was trying to immigrate to the United States. But, on the other hand, MARIA did not want to abandon her Russian Federation citizenship, MARIA had renewed her internal passport of the Russian Federation and "Vitaliy" did not see MARIA as the defector.

74. BORIS knew that in June of 2003 MARIA graduated from the OMSK State Technical University and already on June 18, 2003 MARIA entered the United States, and in 2007 MARIA had already the connection to San Diego of California, where, as BORIS knew from public records, Naval Base San Diego, the largest base of the U.S. Navy on the West Coast of the United States was situated, and on the other side of the Pacific Ocean, there were located the Russian Federation Naval Facilities, including those for about 30

submarines (like the Russian Navy nuclear-powered cruise missile submarine K-186 OMSK disarmed now under the treaty with the United States, but otherwise which could carry twenty-four 500 kt nuclear warheads, what would equal to about 800 Hiroshima atomic bombs).

75.    In the end of the 2007 ROMAN began to work in Spain, partly, in order to avoid the harassment by Newton Police. On December 14, 2007 a Police Officer came to make questioning or to arrest ROMAN as the alleged violator of the Abuse Prevention Order, again under the same reason that his wife was complaining, but ROMAN was in Spain, so the arrest was not made.  Newton Police Officer committed act of Harassment to Plaintiffs.

76.    The Court hearing of the criminal case was held on July 2, 2008.  Again, there was lobbying. ROMAN was compelled to accept pretrial probation without admitting to guilt, because ROMAN knew well from his previous experience in that Court that the Judicial Officers of Newton District Court were friends of Newton Police – the building of Newton District Court was adjacent and connected to the building of Newton Police – therefore there was almost impossible to ROMAN to be tried impartially in Newton District Court. That was, at least, the violation of the constitutional principle of the Separation of Powers by Newton Police and Newton District Court.

77.    At the hearing the Assistant District Attorney, upon information and belief, Patrick Michael Grogan (the successor to Deborah Gaffney) read only the first page of the unfounded Incident Report #7037810 and did not read deliberately the second page of the report, where the actual proof of ROMAN's innocence was given, to wit, the alleged travel in the future by Police Sergeant John Shea was described and where the reporting Police Officer Thomas DeStefano wrote, "there was no visible sign of abuse on MARIA's body" and about

MARIA's Green Card. The attorney Timothy M. Burke representing ROMAN did not object. The judge ordered the pretrial probation under M. G. L. c.276, § 87 without finding or admitting to guilt. On March 3, 2009, at hearing of the Motion to Dismiss the charge, again the Assistant District Attorney Patrick Michael Grogan read only the accusations written on the first page of the unfounded Incident Report #7037810 and did not read deliberately its second page, where the actual proof of ROMAN's innocence was given. The criminal charge to ROMAN was dismissed on July 2, 2009. The Assistant District Attorney committed Obstruction of Justice, at least.

78.    Since August 25, 2007, when the Criminal Proceeding was commenced, the prosecution disclosed nothing under Rule 14 Pretrial Discovery, including the Mandatory Discovery for the defendant. The prosecution did not make questioning to ROMAN. The Assistant District Attorney did not study the only evidence, the unfounded Incident Report #7037810, and at the Court proceedings, the Assistant District Attorney presented only accusations by MARIA and never presented to the Court the actual proof of ROMAN's innocence written by the Police Officer Thomas DeStefano on the second page of the report – Commonwealth by its Assistant District Attorney failed to prosecute ROMAN in accordance with the law. That was the malicious prosecution, at least.

79.    On July 16, 2008 ROMAN filed Notice of Appeal with Newton District Court, requested the tape of the Court proceeding of August 27, 2007 and paid $50.50 for it. On July 29, 2008, Clerk of Newton District Court Henry H. Shultz refused to produce the tape and returned the money paid. Whereas "Access means more than the ability to attend open court proceedings; it encompasses the right of the public to inspect and to copy judicial records." Littlejohn v. BIC Corp., 851 E2d 673, 678 (3d Cir. 1988). The tape contained the

record of the Court proceeding of August 27, 2007, where there were made under the oath the statements by MARIA about her attacking ROMAN and her illegal taking of the immigration documents sent to ROMAN by the U.S. Government and her promise to return them. The Clerk committed Obstruction of Justice, at least. Somebody of Newton District Court and/or Newton Police asked him to do that, in order to prevent the prosecution of MARIA's fraud against the United States.

80.     On August 28, 2008 two Newton Police Officers brought to Plaintiff's residence the Abuse Prevention Order vacated (case was closed) after hearing by a Judge and then extended without a hearing and a complaint by Presiding Justice Dyanne J. Klein. Those two Newton Police Officers did not tell their full, real names and did not have any complaint in hands, though they had to have the complaint. One of the Officers, introducing self as "the Police Officer 101", began harassing BORIS.

81.     Later it became known that Dyanne J. Klein overglued (do not confuse with overruled) the section F. Prior Court Order Vacated, being previously filled out by other Judge Groco J. after hearing (at which the order was vacated) with the new section C. Prior Court Order Extended and sign it without any hearing or complaint. Dyanne J. Klein helped MARIA to avoid prosecution and continue her attempt to defraud the United States – there was no abuse to MARIA and no need in Abuse Prevention, but unlawful continuance of the prevention from prosecution of MARIA's fraud against the United States. Dyanne J. Klein committed Obstruction of Justice, at least. Newton Police officers committed act of Harassment, at least.

82.     Plaintiffs BORIS, RUFINA and ROMAN were not able to sleep at nights. All three felt mental anguish, loss of enjoyment of life, were brought into deep distress with unjust arrest, Newton Police harassment and unjust Court proceedings, which interfere with

the Plaintiffs' obligation under Oath of Allegiance for Naturalized Citizens to "… support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; …".

83.     On about August 20, 2009, the family submitted the Demand Letter to the City of Newton to reimburse them for emotional pain, suffering, inconvenience, mental anguish, monetary losses happened and future, loss of enjoyment of life, harassment, ethnic and citizenship discrimination and damage to their reputation caused by Newton Police. In its letter, the City of Newton answered that the investigation is in progress and there was no further answer.

## FIRST CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 U.S.C. § 1983
(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan, in their individual capacities)

84.     Plaintiffs incorporate paragraphs 1-83 above.

85.     John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan are "persons," as that term is used in the text of 42 U.S.C. § 1983.

86.     Under color of state law John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan, acting individually and in concert, initiated and continued criminal prosecutions against ROMAN on a charge of Assault and Battery.

87.     There was no probable cause for the criminal prosecution of ROMAN.

88.     The criminal prosecutions terminated in favor of ROMAN.

89.     John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

26

Spalding; Deborah Gaffney; and Patrick Michael Grogan 's actions were malicious and
evidenced a reckless and callous disregard for, and deliberate indifference to ROMAN's
constitutional rights.

90.     As result of that wrongful prosecution, ROMAN was seized and deprived of
his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

91.     As a direct and foreseeable consequence of that deprivation, ROMAN have
suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy and
irreparable harm to his reputation.

92.     As a further consequence of that deprivation, ROMAN was required to retain
counsel to represent him in the criminal proceedings pursued against him, and incurred
expenses associated with defending against the unlawful criminal proceeding initiated and
sustained by Defendants.

### SECOND CAUSE OF ACTION:
### MALICIOUS SEARCHES AND SEIZURES IN VIOLATION OF
### 42 U.S.C. § 1983
(Against John Shea; George Claflin; and Thomas Cloonan, in their individual capacities)

93.     Plaintiffs incorporate paragraphs 1-83 above.

94.     John Shea; George Claflin; Thomas Cloonan are "persons," as that term is
used in the text of 42 U.S.C. § 1983.

95.     Under color of state law John Shea; George Claflin; Thomas Cloonan, acting
individually and in concert, searched BORIS, RUFINA and ROMAN's apartment and
BORIS and RUFINA's bedroom and ROMAN's car and seized BORIS's shirt and
ROMAN's key to his car.

96.     There was no probable cause for the searches and seizures.

97.     Under color of state law John Shea put BORIS, RUFINA and ROMAN's

names in a fake Complaint for Protection from Abuse and a fake Abuse Prevention Order.

98.    John Shea; George Claflin; Thomas Cloonan actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to BORIS, RUFINA and ROMAN's constitutional rights.

99.    As result of that wrongful search and seizure BORIS, RUFINA and ROMAN were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

100.    As a direct and foreseeable consequence of that deprivation, BORIS, RUFINA and ROMAN have suffered economic loss, physical harm, emotional trauma, loss of privacy and irreparable harm to their reputation.

101.    As a further consequence of that deprivation, ROMAN was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### THIRD CAUSE OF ACTION:
### CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 U.S.C. § 1983
(Against Deborah Gaffney; and Patrick Michael Grogan, in their individual capacities)

102.    Plaintiffs incorporate paragraphs 1-79 above.

103.    Deborah Gaffney; Patrick Michael Grogan are "persons," as that term is used in the text of 42 U.S.C. § 1983.

104.    Under color of law, Deborah Gaffney; Patrick Michael Grogan, acting individually and in concert, concealed evidence of ROMAN's actual innocence from the Court.

105.    Deborah Gaffney; Patrick Michael Grogan 's actions evidenced a reckless and

callous disregard for, and deliberate indifference to ROMAN's constitutional rights.

106.    As a result of these Defendants' conduct, ROMAN was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

107.    As a direct and foreseeable consequence of that deprivation, ROMAN has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, and irreparable harm to his reputation.

108.    As a further consequence of that deprivation, ROMAN was required to retain counsel to represent him in criminal proceedings pursued against him, and incurred expenses associated with defending against the criminal proceedings initiated and sustained by Defendants.

### FOURTH CAUSE OF ACTION:
### FABRICATION OF FALSE EVIDENCE IN VIOLATION OF 42 U.S.C. § 1983
(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Henry H. Hultz, in their individual capacities)

109.    Plaintiffs incorporate paragraphs 1-83 above.

110.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Henry H. Hultz are "persons," as that term is used in the text of 42 U.S.C. § 1983.

111.    Acting under color of law, John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Henry H. Hultz, individually and in concert, conspired to produce a false and misleading Application for Criminal Complaint and Criminal Complaint that they understood and agreed would be falsely misrepresented as true documents and that would be used in the criminal proceeding instituted against ROMAN.

112.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

Spalding; Deborah Gaffney; and Henry H. Hultz 's actions evidenced a reckless and callous

disregard for, and deliberate indifference to, ROMAN's constitutional rights.

113.    As a result of Defendants' conduct, ROMAN was deprived of his rights under

the Fourth and Fourteenth Amendments to the United States Constitution.

114.    As a direct and foreseeable consequence of these deprivations, ROMAN has

suffered economic loss, physical harm, emotional trauma, and irreparable harm to his

reputation.

115.    As a further consequence of that deprivation, ROMAN was required to retain

counsel to represent them in the criminal proceedings pursued against him, and incurred

expenses associated with defending against the unlawful criminal proceedings initiated and

sustained by Defendants.

## FIFTH CAUSE OF ACTION:  VIOLATIONS OF 42 U.S.C. § 1983
### (*MONELL V. DEP'T OF SOCIAL SERVS.*, 436 U.S. 658 (1977))

(Against Matthew Cummings; John O'Brian; David B. Cohen, in their official capacities
of Supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor,
and the City of Newton)

116.    Plaintiffs incorporate the allegations made in paragraphs 1-115 above.

117.    Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren, and the

City of Newton are "persons," as that term is used in the text of 42 U.S.C. § 1983.

### A.    The Supervisors and other Officials with Final Policymaking Authority for Newton Police Do Not Object the Unconstitutional Conduct of Their Subordinates.

118.    Upon information and belief, the Supervisors and other officials in the City of

Newton having final policymaking authority for Newton Police had or should have

knowledge through the chain of command that Newton Police officers John Shea; George

Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding and person "Introducing

self as the Police Officer 101"were involved in official conduct that violated constitutional standards, to wit, conducting manipulative reporting procedures, concealing evidence of ROMAN's innocence, fabricating false evidence, and making false arrests, unlawful searches and seizers.

119.    It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of Plaintiffs' constitutional rights.

120.    Upon information and belief, the Supervisors and other officials in the City of Newton and the Newton Police nevertheless do not object this unconstitutional conduct by their subordinates John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding and person "Introducing self as the Police Officer 101" in Newton Police.

121.    As a direct and foreseeable consequence of this acquiescence policy, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### B.    The Supervisors' Failures to Train, Control, and Supervise Newton Police Officers Led to Violations of Plaintiffs' Constitutional Rights.

122.    The Supervisors and other officials in the City of Newton and the Newton Police demonstrated reckless or callous indifference to the rights of a potential criminal suspect by failing to take meaningful action to correct this conduct.

123.    Upon information and belief, The Supervisors and other officials in the City of Newton having final policymaking authority for Newton Police had or should have knowledge through the chain of command that Newton Police Officers John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; person "Introducing self as the Police Officer 101" were involved in official conduct that violated constitutional standards, to wit, conducting manipulative reporting procedures, concealing evidence of a

criminal suspect's innocence, fabricating false evidence, and making false arrests, unlawful searches and seizers, but the Supervisors and other officials in the City of Newton demonstrated reckless disregard or deliberate indifference by failing to take prompt and meaningful preventative or remedial action.

124.    The Supervisors' actions evidenced a reckless and callous disregard for, and deliberate indifference to a criminal suspect and his parents' constitutional rights.

125.    As a direct and foreseeable consequence of the Supervisors' failures to train and supervise Newton Police, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

126.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, and irreparable harm to their reputations.

127.    As a further consequence of these deprivations, a criminal suspect was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

\* \* \*

128.    As a direct and foreseeable consequence of each of the foregoing constitutional deprivations caused by policymaking officials, customs and practices, and policies in the City of Newton and the Newton Police Department, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputations.

129.    As a further consequence of these deprivations, ROMAN was required to

retain counsel to represent him in the criminal proceedings pursued against him, and incurred

expenses associated with defending against the unlawful criminal proceedings initiated and

sustained by Defendants.

**SIXTH CAUSE OF ACTION: SUPERVISORY VIOLATIONS OF 42 U.S.C. § 1983**
(Against the Supervisors Matthew Cummings; John O'Brian; David B. Cohen,
in their individual capacities)

130.    Plaintiffs incorporate the allegations made in paragraphs 1-129 above.

131.    The Supervisors are "persons," as that term is used in the text of 42 U.S.C. §

1983.

### A.    The Supervisors' Failure to Supervise the Newton Police Officers Resulted in Violations of Plaintiffs' Constitutional Rights.

132.    The Supervisors knew, or should have known, about the abuses by Newton

Police Officers to Plaintiffs. The Supervisors failed to take meaningful preventative or

remedial action.

133.    With the inability to prevent or acquiescence or approval of the abuses by

Newton Police Officers to Plaintiffs, the Supervisors assumed direct responsibility for the

abuses by Newton Police Officers to Plaintiffs.

134.    The Supervisors' actions evidenced a reckless and callous disregard for, and

deliberate indifference to Plaintiffs' constitutional rights.

135.    As a direct and foreseeable consequence of these acts and omissions, Plaintiffs

were deprived of their rights under the Fourth and Fourteenth Amendments to the United

States Constitution.

136.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have

suffered economic loss, physical harm, emotional trauma, loss of privacy, and irreparable

harm to their reputations.

137.   As a further consequence of these deprivations, ROMAN was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

### SEVENTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983

(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan; Henry H. Shultz, in their individual and official capacities, Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; Dyanne J. Klein in her individual capacity)

138.   Plaintiffs incorporate the allegations made in paragraphs 1-137 above.

139.   John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein are "persons," as that term is used in the text of 42 U.S.C. § 1983.

140.   Under color of state law, John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiffs of their constitutional rights by charging and prosecuting ROMAN on charge of Assault and Battery, which these Defendants knew were not supported by probable cause, and libeling and harassing BORIS and RUFINA as ROMAN's parents.

141.   John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings;

34

John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein willfully participated in this illegal objective by various means described in paragraphs 1-137 above, with the intent to further some purpose of the conspiracy.

142. John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein's actions evidenced a reckless and callous disregard for, and deliberate indifference to Plaintiffs' constitutional rights.

143. As a direct and foreseeable consequence of these acts and omissions, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

144. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of privacy, and irreparable harm to their reputations.

145. As a further consequence of these deprivations, ROMAN was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

## EIGHTH CAUSE OF ACTION:
## CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(2)
## (OBSTRUCTION OF JUSTICE)

(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan; Henry H. Shultz, in their individual and official capacities, Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; Dyanne J. Klein in her individual capacity; and the City of Newton)

35

146.    Plaintiffs incorporate the allegations made in paragraphs 1-145 above.

147.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren; Dyanne J. Klein; and the City of Newton are "persons," as that term is used in the text of 42 U.S.C. § 1985.

148.    Under color of state law, John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein; and the City of Newton conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the Commonwealth of Massachusetts, with the intent to deny Plaintiffs the equal protection of the laws.

149.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein; and the City of Newton willfully participated in this illegal objective by various means described in paragraphs 1-145 above, with the intent to further some purpose of the conspiracy.

150.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein; and the City of Newton's actions evidenced a reckless and callous disregard for, and deliberate indifference to Plaintiffs' constitutional rights.

151.    As a direct and foreseeable consequence of these acts and omissions, Plaintiffs

were deprived of their rights under the Fourth and Fourteenth Amendments to the United

States Constitution.

152.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have

suffered economic loss, physical harm, emotional trauma, loss of privacy, and irreparable

harm to their reputations.

153.    As a further consequence of these deprivations, ROMAN was required to

retain counsel to represent him in the criminal proceedings pursued against him, and incurred

expenses associated with defending against the unlawful criminal proceedings initiated and

sustained by Defendants.

### NINTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(3)

(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano;
William Spalding; Deborah Gaffney; and Patrick Michael Grogan; Henry H. Shultz, in their
individual and official capacities, Matthew Cummings; John O'Brian; David B. Cohen, in
their individual and official capacities of supervisors; Setti D. Warren, in his official capacity
as the Successor to the Supervisor; Dyanne J. Klein in her individual capacity; and the City
of Newton)

154.    Plaintiffs incorporate the allegations made in paragraphs 1-153 above.

155.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings;

John O'Brian; David B. Cohen, Setti D. Warren; Dyanne J. Klein; and the City of Newton

are "persons," as that term is used in the text of 42 U.S.C. § 1985.

156.    Under color of state law, John Shea; George Claflin; Thomas Cloonan;

Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H.

Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J.

Klein; and the City of Newton conspired and entered into express and/or implied agreements,

understandings, or meetings of the minds among themselves for the purpose of depriving,

either directly or indirectly, Plaintiffs of the equal protection of the laws and of their equal privileges and immunities under the laws.

157.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein; and the City of Newton willfully participated in this illegal objective by various means described in paragraphs 1-145 above, with the intent to further some purpose of the conspiracy.

158.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Matthew Cummings; John O'Brian; David B. Cohen, Setti D. Warren and Dyanne J. Klein; and the City of Newton's actions evidenced a reckless and callous disregard for, and deliberate indifference to Plaintiffs' constitutional rights.

159.    As a direct and foreseeable consequence of these acts and omissions, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

160.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of privacy, and irreparable harm to their reputations.

161.    As a further consequence of these deprivations, ROMAN was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

## TENTH CAUSE OF ACTION:
## CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1986 (NEWTON POLICE)

(Against Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; and the City of Newton)

162.   Plaintiffs incorporate the allegations made in paragraphs 1-161 above.

163.   Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; and the City of Newton are "persons," as that term is used in 42 U.S.C. § 1986.

164.   Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; and the City of Newton had or should have prior knowledge of the wrongs conspired to be committed by Defendants John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano and William Spalding.

165.   Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; and the City of Newton had the power to prevent or aid in preventing the commission of the wrongs conspired to be committed by Defendants John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano and William Spalding, and which by reasonable diligence could have been prevented, but they neglected and/or refused to exercise such power.

166.   As a direct and proximate result of the neglect and/or refusal of the Supervisors Newton Police Department, and the City of Newton to prevent or to aid in preventing the commission of the wrongs conspired to be committed by Defendants John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano and William Spalding the

39

Plaintiffs suffered injuries and damages as alleged herein.

167.    The Supervisors, Newton Police Department, and the City of Newton's actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

168.    As a direct and foreseeable consequence of this conspiracy, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

169.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of privacy and irreparable harm to their reputations.

170.    As a further consequence of these deprivations, ROMAN was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

## ELEVENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND CONSPIRACY
(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz, in their individual and official capacities; Dyanne J. Klein, in individual capacity)

171.    Plaintiffs incorporate the allegations made in paragraphs 1-170 above.

172.    Beginning on August 25, 2007 John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan; Henry H. Shultz; and Dyanne J. Klein acting individually and in concert, instituted or participated in the institution of criminal and civil, with possible criminal consequences, proceedings against ROMAN.

173.    These proceedings were not supported by probable cause – the criminal proceedings were terminated in ROMAN's favor on July 2, 2009; the civil, with possible criminal consequences, proceedings are current.

174.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan; Henry H. Shultz and Dyanne J. Klein demonstrated malice, spite, ill-will, and wanton disregard for Plaintiffs' rights by conspiring to manufacture and by manufacturing false and misleading court documents with the knowledge that these documents would be used to advance and perpetuate the criminal and civil process against ROMAN.

175.    Henry H. Shultz and Dyanne J. Klein further demonstrated malice, spite, ill-will, and wanton disregard for Plaintiffs' rights by attempting to hide evidence and court documents rather than giving access of the public, including Plaintiffs, to judicial records in order to inspect and copy them.

176.    As a direct and foreseeable consequence of Defendants' conduct, ROMAN was unreasonably and unlawfully subjected to criminal and civil prosecution.

177.    As a direct and foreseeable consequence of being subjected to prosecution, ROMAN and his parent BORIS and RUFINA have suffered economic loss, physical harm, emotional trauma, loss of privacy, and irreparable harm to their reputations.

178.    As a further consequence of being subjected to prosecution, ROMAN was required to retain counsel to represent them in protracted criminal and civil proceedings, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

## TWELVETH CAUSE OF ACTION:
## OBSTRUCTION OF JUSTICE AND CONSPIRACY

(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz, in their individual and official capacities; Dyanne J. Klein, in individual capacity)

179.   Plaintiffs incorporate the allegations made in paragraphs 1-178 above.

180.   Beginning on August 25, 2007 John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; and Patrick Michael Grogan; Henry H. Shultz; and Dyanne J. Klein acting individually and in concert, engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the Commonwealth of Massachusetts.

181.   John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz and Dyanne J. Klein engaged in this obstruction of justice by conspiring to manufacture and by manufacturing false and misleading court documents with the knowledge that these documents would be used to advance and perpetuate the criminal and civil process against ROMAN.

182.   Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz and Dyanne J. Klein engaged in this obstruction of justice by attempting to hide evidence and court documents rather than giving access of the public, including Plaintiffs, to judicial records in order to inspect and copy them.

183.   As a direct and foreseeable consequence of Defendants' conduct, ROMAN was unreasonably and unlawfully subjected to criminal and civil prosecution that were sustained by Defendants' continuing unlawful actions.

184.   As a direct and foreseeable consequence of being subjected to prosecution, ROMAN and his parent BORIS and RUFINA have suffered economic loss, physical harm, emotional trauma, loss of privacy, and irreparable harm to their reputations.

185.    As a further consequence of being subjected to prosecution, ROMAN was

required to retain counsel to represent them in protracted criminal and civil proceedings, and

incurred expenses associated with defending against the unlawful criminal proceedings

initiated and sustained by Defendants.

### THIRTEENTH CAUSE OF ACTION:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND
### CONSPIRACY

(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William
Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz, in their individual
and official capacities; Dyanne J. Klein, in individual capacity)

186.    Plaintiffs incorporate the allegations made in paragraphs 1-185 above.

187.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

Spalding; Deborah Gaffney; Patrick Michael Grogan; Henry H. Shultz; Dyanne J. Klein

acted individually and in concert to manufacture inculpatory evidence and to conceal

exculpatory evidence for the purpose of perpetuating a criminal and civil action against

ROMAN falsely charging him with Assault and Battery – charge that was calculated to

shame, to humiliate, and to produce public condemnation of the Plaintiffs.

188.    In combination with conduct described above, these actions evidenced a

pattern of extreme and outrageous behavior pursued with the intent to cause Plaintiffs to

suffer severe emotional distress.

189.    Defendants' conduct had the direct and foreseeable consequence of marking

ROMAN as violent criminal in the minds of thousands of people.

190.    Despite ROMAN's exoneration, Defendants' conduct will continue to have

deleterious effects on Plaintiffs, who will forever be associated with the false allegations

advanced by Defendants.

191.     As a result of Defendants' intentional and outrageous conduct, Plaintiffs have

suffered and continue to suffer from emotional and mental conditions generally recognized

and diagnosed by trained professionals.

192.     As a direct and foreseeable consequence of those conditions, Plaintiffs have

suffered, and continue to suffer, disabling emotional, mental, and physical harm.

### FOURTEENTH CAUSE OF ACTION: NEGLIGENT SUPERVISION, HIRING, TRAINING, DISCIPLINE, AND RETENTION BY NEWTON POLICE
(Against Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; and the City of Newton)

193.     Plaintiffs incorporate the allegations made in paragraphs 1-192 above.

194.     At the time of the events alleged above, each of Defendants Matthew

Cummings; John O'Brian; David B. Cohen; Setti D. Warren; and the City of Newton owed

Plaintiffs a duty to use due care in the hiring, training, supervision, discipline, and retention

of Newton Police personnel, including the personnel involved in the investigation of

MARIA's claims.

195.     Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren; and the

City of Newton negligently supervised Defendants John Shea; George Claflin; Thomas

Cloonan; Thomas DeStefano; William Spalding by failing to provide them with proper

training, and failed to outline proper procedure to them in various respects relating to the

appropriate conduct of criminal investigations, including by way of example:

1.     the appropriate chain of command in criminal investigations, including responses to domestic violence;

2.     the prohibition of harassment, threats, inducements, or intimidation of participants of criminal and civil actions, including for domestic violence;

44

3.    the standards for police reports and similar documents, including the

timely and truthful preparation of such documents;

4.    the standards for reasonable and probable cause;

196.    In committing the aforementioned acts or omissions, each Supervisory

Defendant negligently breached said duty to use due care, which directly and proximately

resulted in the injuries and damages to Plaintiffs as alleged herein.

### FIFTEENTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY NEWTON POLICE
(Against John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding in their individual and official capacities, Matthew Cummings; John O'Brian; David B. Cohen, in their individual and official capacities of supervisors; Setti D. Warren, in his official capacity as the Successor to the Supervisor; and the City of Newton)

197.    Plaintiffs incorporate the allegations made in paragraphs 1-196 above.

198.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

Spalding; Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren; and the City

of Newton acted individually and in concert to manufacture false evidence and to conceal the

evidence of ROMAN's innocence for the purpose of charging and prosecuting on charges of

Assault and Battery, which charge they knew or reasonably believed or should know was

false and unsupported by probable cause.

199.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

Spalding; Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren; and the City

of Newton's conduct violated or departed from Newton Police policies and procedures,

including Massachusetts Policy for Law Enforcement Response to Domestic Violence.

200.    John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William

Spalding; Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren; and the City

of Newton were negligent in engaging in this conduct, from which it was reasonably

foreseeable that Plaintiffs would suffer emotional and psychological harm.

201.    As a direct and foreseeable consequence of John Shea; George Claflin; Thomas Cloonan; Thomas DeStefano; William Spalding; Matthew Cummings; John O'Brian; David B. Cohen; Setti D. Warren; and the City of Newton's conduct, Plaintiffs have suffered and continue to suffer from diagnosable emotional and mental conditions causing disabling emotional, mental, and physical harm.

## PRAYER FOR RELIEF

WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1-201 above, and to prevent the substantial risk of irreparable injury to other persons in the City of Newton as a result of the policies, customs, practices, and supervisory misconduct alleged herein, Plaintiffs hereby request the following relief:

The issuance of an Order and Permanent Injunction ("Permanent Injunction") that:

i.    appoints an independent monitor (the "Monitor"), to be determined by the Court, who shall oversee certain activities of the Newton Police Department for a period of ten (10) years, and who shall report to the Court on an annual basis regarding Defendants' compliance or non-compliance with the terms of the Permanent Injunction;

ii.    authorizes the Monitor to establish, review, and enforce all policies applicable to the management of the Newton Police Department;

iii.    provides the Monitor with the authority to hire, fire, and promote all Newton Police officials, including the Chief of Police;

iv.    establishes an independent citizen Police Review Committee, composed of three members selected by the Court, which shall review and hear publicly complaints of

misconduct by Newton residents against Newton Police personnel and make recommendations to the Monitor as to discipline or innocence;

   v.      orders that all Fingerprinting and Photographing and similar procedures conducted by the Newton Police Department, whether formal or informal conform to the Commonwealth of Massachusetts standards;

   vi.     orders that the Newton Police Department provide proper training, based on materials and plans approved by the Monitor, to all current and new personnel (the "Remedial Training") on the following matters:

      1.      the appropriate chain of command in criminal investigations, including responses to domestic violence;

      2.      the prohibition of harassment, threats, inducements, or intimidation of participants of criminal and civil actions, including for domestic violence;

      3.      the standards for police reports and similar documents, including the timely and truthful preparation of such documents;

      4.      the standards for reasonable and probable cause;

   vii.    enjoins the Newton Police Department from exercising any judicial power;

   viii.   enjoins the Newton Police Department from affecting the officers of District Attorney Office and West Newton District Court;

   ix.     requires the City of Newton to pay all costs relating to the Monitor, Police Review Committee, and Remedial Training for the duration of the Permanent Injunction; and damages in an amount to be established at trial as compensation for (and damage to their reputation) constitutional deprivations, citizenship discrimination, past and future economic loss, physical harm, emotional trauma, suffering, inconvenience, loss of privacy, loss of

47

reputation, and loss of enjoyment of life; and expenses associated with defending against the criminal proceedings initiated and sustained by Defendants' unlawful conduct; damages in an amount to be established at trial to punish Defendants for outrageous conduct pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage them from engaging in similar conduct in the future, and to deter others similarly situated from engaging in similar misconduct; an award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action; and whatever additional relief the Court may deem proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all claims so triable.

Dated: August 24, 2010                                Respectfully submitted

Boris Karpachev, Pro Se
535 Auburn St., apt 2
Auburndale, MA 02466
Phone: 617-964-1776
Email: bcarpaccio@gmail.com
(Pro Se to be contacted)

Rufina Veysberg, Pro Se
535 Auburn St., apt 2
Auburndale, MA 02466

Roman Karpachev, Pro Se
535 Auburn St., apt 2
Auburndale, MA 02466